# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

MARK GUZY,

    Plaintiff,

vs.

MARY ANN GUZY,

    Defendant.

3:19-cv-00129-RJC-CBC

**ORDER**

The Plaintiff moves this Court to enter a temporary restraining order and preliminary injunction enjoining the Defendant from confirming either of two arbitration decisions awarded in the Defendant's favor. Because the Plaintiff has failed to show any irreparable harm, the Court denies the Plaintiff's Motion for Temporary Restraining Order (ECF No. 7) and Motion for Preliminary Injunction (ECF No. 8). The Court does not reach the merits of any other contentions made by the parties at this time.

I.    **FACTS AND PROCEDURAL HISTORY**

The Plaintiff and the Defendant were limited partners of Arbor Co., a Nevada LLP. (Compl. 3:1–3:7, ECF No. 1.) All three entities entered into a settlement agreement in February 12, 2009. (*Id.* 3:15–3:20.) Under the agreement, Arbor Co., was to pay the Plaintiff $34,975,842.22 with interest and pay the Defendant $21,139,769.25 with interest. (Mot. for TRO Ex. 2, ECF No. 7.) Additionally, the parties agreed to resolve all disputes related to their

agreement through the arbitration of William Sherman, Esq. ("the Arbitrator"). (Compl. 3:15–3:20.)

On April 11, 2014, the Arbitrator found that the Plaintiff had been overpaid due to a mistake in the interest rate at which his debt accrued, so the Arbitrator issued an award against the Plaintiff and in the Defendant's favor (April 11, 2014 Arbitration Award). (*Id.* 4:9–4:13.) Under the April 11, 2014 Arbitration Award, the Plaintiff was to pay the Defendant "(i) the $1,269,827.78 principal amount of such overpayment plus (ii) the accrued interest at 5.25% per annum on such amount from May 5, 2011 . . . the per diem rate of interest on the $1,269,827.78 principal payment due from [the Plaintiff] to [the Defendant] is $182.65." (*Id.* Ex. 1 at 3.)

On October 11, 2012, prior to the April 11, 2014 Arbitration Award, the Plaintiff sued Arbor Co. in Nevada state court ("the Nevada state case"), and in the course of this litigation, sought to vacate the April 11, 2014 Arbitration Award. (*Id.* 4:17–4:21.) During the pendency of this litigation, the Defendant sought to interplead in the Nevada state case in 2018. (Mem. in Opp'n to TRO 4:15–5:2, ECF No. 19.) Before the court addressed the Defendant's interpleader, the Plaintiff and Arbor Co. filed a stipulated dismissal of the case. (*Id.*) The Nevada court dismissed the case on July 13, 2018. (*Id.*) However, the Defendant filed a successful motion to reconsider the dismissal, and the Nevada court reopened the case on August 1, 2018. *Id.* The Plaintiff challenged the reopening of the case seeking a writ of mandamus with the Nevada Supreme Court, which was denied on February 7, 2019. (*Id.*)

During the pendency of the state court case, the Defendant sought to confirm the April 11, 2014 Arbitration Award in the United States District Court for the Western District of Texas ("the Texas federal case"). *Guzy v. Guzy*, No. 1:17-CV-228-RP, 2017 WL 3032432 (W.D. Tex. July 17, 2017). The district court dismissed the application to confirm the April 11, 2014 Arbitration Award with prejudice on the basis that the application was untimely as there is a one-

year statute of limitation to confirm an arbitration award under the Federal Arbitration Act. *Id.*; *see* 9 U.S.C. § 9. Subsequently, the Defendant sought to confirm the Arbitration Award in Texas state court in May 2018. (Compl. 6:14–6:20.) After the Plaintiff filed an answer and the Nevada state case was remanded to finally reach the merits on whether to confirm the April 11, 2014 Arbitration Award, the Defendant nonsuited the Texas state case. (*Id.*; Mem. in Opp'n to TRO 5:26–6:2.)

Subsequently, the Defendant sought arbitration to cover her expenses due to the Plaintiff's purported refusal to comply with the April 11, 2014 Arbitration Award. (Mem. in Opp'n to TRO 6:4–6:24.) The Plaintiff denied that the Arbitrator retained jurisdiction over the matter. (*Id.*) However, on May 1, 2019, the Arbitrator held that he retained jurisdiction over the matter, that the Plaintiff was in defiance of the April 11, 2014 Arbitration Award, and that Plaintiff's further assertions were meritless (May 1, 2019 Arbitration Award). (*Id.*) The Arbitrator found that the Plaintiff's repeated attempts to avoid payment were vexatious. Accordingly, the Arbitrator: (i) reaffirmed his prior orders; (ii) set the principal amount and the accrued unpaid interest on such principal amount due from the Plaintiff to the Defendant through December 31, 2018 as $1,472,545.42 and $592,417.12 respectively; (iii) determined that the per diem dollar amount of interest owed by the Plaintiff to the Defendant was $211.80; (iv) imposed a sanction of $200,000; and, (v) awarded the Defendant an additional $50,000, including interest, in sanctions until the Plaintiff pays the Defendant the full amount due. (*Id.*)

The confirmation of the April 11, 2014 Arbitration Award is now before the Nevada state court. (Mem. in Opp'n to TRO 5:3–5:10.) Plaintiff has filed the present action seeking an injunction to enjoin the Defendant from enforcing either arbitration award and to enjoin all other litigation.

///

## II. LEGAL STANDARDS

A temporary restraining order should be limited to carrying out its "underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods v. Bd. of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 439 (1974). It "is an extraordinary remedy never awarded as of right." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Temporary restraining orders are durationally limited and automatically expire, as their purpose is to preserve the status quo until a hearing can be held for a preliminary injunction. Fed. R. Civ. P. 65(b)(2); *Winter*, 555 U.S. at 24. Such orders are non-appealable, *Mayweathers v. Gomez*, 60 F.3d 833 (9th Cir. 1995); *Forest v. F.D.I.C.*, 976 F.2d 736 n.1 (9th Cir. 1992), and are committed to the sound discretion of the trial court, *Jimenez v. Barber*, 252 F.2d 550, 554 (9th Cir. 1958). A temporary restraining order "may only be awarded upon a clear showing [by] the plaintiff [that it] is entitled to such relief." *Winter*, 555 U.S. at 22.

While temporary restraining orders differ in some respects from preliminary injunctions, the standard for granting a temporary restraining order and a preliminary injunction is the same. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (stating that a separate analysis was not required because the analysis is "substantially identical" for a temporary restraining order and a preliminary injunction); *V'Guara Inc. v. Dec*, 925 F. Supp. 2d 1120, 1123 (D. Nev. 2013). To obtain preliminary injunctive relief, the Ninth Circuit has established two alternative sets of criteria:

> Under the traditional test, a plaintiff must show: (1) a strong likelihood of success on the merits, (2) the possibility of irreparable injury to plaintiff if preliminary relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest (in certain cases). The alternative test requires that a plaintiff demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in his favor.

*Taylor v. Westly*, 488 F.3d 1197, 1200 (9th Cir. 2007). The Supreme Court later ruled, however, that a plaintiff seeking a preliminary injunction must demonstrate that irreparable harm is "likely," not just possible. *Winter v. NRDC*, 555 U.S. 7, 19–23 (2008) (rejecting the alternative "sliding scale" test, at least as to the irreparable harm requirement). In *Stormans, Inc. v. Selecky*, the Ninth Circuit recognized that the "possibility of irreparable injury" test was "definitively refuted" in *Winter* and that the appropriate standard "requires a party to demonstrate 'that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.'" 586 F.3d 1109, 1127 (9th Cir. 2009) (quoting *Winter*, 555 U.S. at 20) (reversing a district court's use of the Court of Appeals' pre-*Winter*, "sliding-scale" standard and remanding for application of the proper standard).

However, the Ninth Circuit later held in *Alliance for the Wild Rockies v. Cottrell* that although irreparable harm must be more likely than not, the sliding scale approach remains viable as to the other requirements, and a plaintiff needn't be more likely than not to succeed on the merits, so long as there are "serious questions" on the merits. 632 F.3d 1127, 1134–35 (9th Cir. 2011) ("That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, . . . [if] the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."). *Cottrell* presents some difficulty in light of *Winter* and *Stormans*. To the extent *Cottrell*'s interpretation of *Winter* is inconsistent with *Stormans*, *Stormans* should control. *See Miller v. Gammie*, 335 F.3d 889, 899 (9th Cir. 2003) (en banc) (discussing the standards for determining controlling authority).

The Supreme Court stated in *Winter* that "[a] plaintiff seeking a preliminary injunction must establish that he is *likely* to succeed on the merits, that he is *likely* to suffer irreparable harm

in the absence of preliminary relief, that the balance of equities tips in his favor, *and* that an injunction is in the public interest." *Winter*, 555 U.S. at 20. As a matter of grammar, the Supreme Court has laid out four conjunctive tests, not a four-factor balancing test, using the word "likely" to modify the success-on-the-merits test in exactly the same way as the irreparable-harm test. In finding the "possibility" of irreparable harm to be insufficient, the *Winter* Court itself emphasized (with italics) the fact that the word "*likely*" modifies the irreparable-harm prong. *Id.* at 22. The word "likely" modifies the success-on-the-merits prong in a textually identical way. *Id.* at 20. Therefore, to satisfy *Winter*, a movant must show that he is likely to succeed on the merits and suffer irreparable harm.

Regarding the irreparable-harm test, *Winter* is clear that the word "likely" means what it normally means, i.e., more probable than not. There is tension in the case law, however, as to the meaning of likely as applied to the success-on-the-merits test. Black's Law Dictionary defines the "likelihood-of-success-on-the-merits test" as "[t]he rule that a litigant who seeks [preliminary relief] must show a reasonable probability of success . . . ." *Black's Law Dictionary* 1069 (10th ed. 2014). A Ninth Circuit case predating *Cottrell* that used the "serious questions on the merits standard" as an alternative to a "probability of success on the merits" defined serious question as a "fair chance of success on the merits." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1985). The Ninth Circuit has reiterated the "fair chance" language since *Cottrell*. *See, e.g., Arc of Cal. v. Douglas*, 757 F.3d 975, 993 (9th Cir. 2014).

### III. ANALYSIS

At the outset, it should be noted that a serious question exists whether this Court should decline to exercise its jurisdiction under the *Colorado River* Abstention Doctrine. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 818 (1976) (stating that in some circumstances "the presence of a concurrent state proceeding" will "permit the district court to

dismiss a concurrent federal suit for reasons of wise judicial administration."). The Nevada state case has been ongoing for several years, and now after the Supreme Court of Nevada remanded the case and determined that the district court properly exercised its discretion in reinstating the case, the Nevada district court is finally ready to reach the merits. It is therefore unclear why this Court should exercise its jurisdiction, particularly considering that: the Nevada state court first assumed jurisdiction; the Nevada state case is ongoing and will likely reach a decision before this Court; the Nevada state case now involves the same issues raised here; the Nevada state court proceedings can adequately protect the Plaintiff's rights, and Nevada law controls under the Parties' Settlement Agreement. (Mot. for TRO Ex. 2.) Assuming without deciding that this Court should exercise its jurisdiction, preliminary injunctive relief is inappropriate, because the Plaintiff has failed to demonstrate the likelihood of irreparable harm.

A likelihood of irreparable harm requires a plaintiff to demonstrate that such harm is more probable than not. *Winter*, 555 U.S. at 22. Speculative injury is insufficient. *Goldie's Bookstore, Inc. v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984). Even if plaintiff demonstrates a strong likelihood of prevailing on the merits, a preliminary injunction may not be granted based on a "possibility" of irreparable harm. *Winter*, 555 U.S. at 22. This is because injunctive relief is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id.*

However, establishing a likelihood of irreparable harm in the future is not enough. The harm must also be imminent. *Midgett v. Tri-Cty. Metro. Transp. Dist. of Oregon*, 254 F.3d 846, 850 (9th Cir. 2001). "In order to be entitled to an injunction, Plaintiff must make a showing that he faces a real or immediate threat of substantial or irreparable injury." *Id.*; *see Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief."). "Such an

immediacy requirement is reasonable when an ongoing activity is to be enjoined because the need for *immediate* relief must be great enough to outweigh the hardship to the defendant." *Privitera v. California Bd. of Med. Quality Assur.*, 926 F.2d 890, 897 (9th Cir. 1991). Thus, injunctive relief is only warranted where it "is . . . needed to guard against . . . present or imminent risk of likely irreparable harm." *Ctr. for Food Safety v. Vilsack*, 636 F.3d 1166, 1174 (9th Cir. 2011) (quoting *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 143 (2010).

"If a trial on the merits is possible before the threatened harm will occur, a preliminary injunction should not issue." Beverly Reid O'Connell & Karen L. Stevenson, *Rutter Group Prac. Guide Fed. Civ. Pro. Before Trial* 13–C Requirements for Injunctive Relief (Cal. & 9th Cir. ed. Mar. 2018 Update). But the Court of Appeals has clarified when a timely trial is not possible, "the fact the threatened harm will not occur for several months is not reason, by itself, to deny a preliminary injunction." *Id.* (citing *Privitera*, 926 F.2d at 897).

Finally, as a third dimension to the requirement of irreparable harm, a plaintiff must demonstrate that imminent irreparable harm is "likely *in the absence of an injunction.*" *Winter*, 555 U.S. at 22 (emphasis added). A plaintiff must not only demonstrate that injunctive relief is imminent and likely but must demonstrate those requirements in the context of a failure to obtain injunctive relief. Meaning, a plaintiff must show that irreparable harm is imminent and likely if the court denies preliminary relief.

To satisfy the standard, the Plaintiff must "*by a clear showing*, carr[y] the burden cf persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, et al., *Federal Practice and Procedure* § 2948 (3d ed. 2018)). Otherwise, injunctive relief "should not be granted." *Id.*

In the present case, the Plaintiff argues that (1) he will be subject to multiple inconsistent judgments from various courts if this Court does not grant him injunctive relief, and (2) that multiple inconsistent judgments amount to irreparable harm. The Plaintiff writes:

> If Mary Ann is permitted forum shop yet another time and go to yet another court to seek confirmation and enforcement of the improper March 2019 award, Mark will suffer irreparable injury for which monetary damages are inadequate. Specifically, Mark will be subject to multiple inconsistent judgements from various courts if Mary Ann is permitted to enforce the March 2019 Award. If Mary Ann is permitted forum shop yet another time and go to yet another court to seek confirmation and enforcement of the improper March 2019 award, Mark will suffer irreparable injury for which monetary damages are inadequate. Specifically, Mark will be subject to multiple inconsistent judgements from various courts if Mary Ann is permitted to enforce the March 2019 Award.

(Mot. for TRO 9:16–9:22.) However, it is not clear that either of Plaintiff's contentions are true or if true merit injunctive relief.

First, the Court is uncertain that multiple inconsistent judgments is a type of harm that is irreparable. "[I]t is beyond dispute that injury capable of being fully remedied by money damages does not constitute irreparable harm." *Cont'l Ins. Co. v. Wehbe*, No. 96 CIV. 1176 (JFK), 1996 WL 109060, at *2 (S.D.N.Y. Mar. 13, 1996); *see e.g., eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) ("According to well-established principles of equity, a plaintiff seeking a permanent injunction must . . . . demonstrate . . . that remedies available at law, such as monetary damages, are inadequate to compensate for that injury."). In analyzing the classification of irreparable harm, the Supreme Court stated, for example, that environmental injury can be irreparable, since it "can seldom be adequately remedied by money damages and is often permanent or at least of long duration." *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 545 (1987). Inconsistent legal judgments, although burdensome, may be remedied by monetary damages. If the Plaintiff succeeds here, he may be entitled to attorney's fees and costs and can bring further actions or motions for damages sustained by frivolous litigation. If on the

other hand, the Defendant succeeds or has reasonable grounds for her litigation, it is difficult to see why the Plaintiff is harmed—and irreparably so—by defending non-frivolous claims. Although he might be forced to pay for legal representation, the Court of Appeals has made clear that "[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." *Nationwide Biweekly Admin., Inc. v. Owen*, 873 F.3d 716, 736 n.20 (9th Cir. 2017) (quoting *Renegotiation Bd. v. Bannercraft Clothing Co., Inc.*, 415 U.S. 1 (1974)) (quotation marks omitted); *Kern Cty. Superintendent of Sch.-valley Oaks Charter Sch. Tehachapi v. A.C.*, No. 118CV01331LJOSAB, 2018 WL 4698312, at *1 (E.D. Cal. Sept. 28, 2018) (holding that defending against a meritless claim does not constitute irreparable injury); *KEE Action Sports, LLC v. Shyang Huei Indus. Co.*, No. 3:14-CV-00071-HZ, 2014 WL 5780812, at *4 (D. Or. Nov. 5, 2014) ("The cost of litigation is not irreparable harm") (citation omitted)).

Furthermore, adequate remedies at law exist for inconsistent or erroneous legal judgments—the Plaintiff can directly appeal or legally challenge incorrect determinations. As the Supreme Court has "repeatedly held . . . the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982). "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). Here, the purported harm of inconsistent legal determinations is tangible and direct legal remedies exist, unlike other intangible injuries that have been considered irreparable in some cases, such as environmental injury, loss of interest in real property, death, severe physical injury, substantial loss of business, loss of market share, price erosion, or lost business opportunities. O'Connell & Stevenson, *supra*, 13–C Requirements for Injunctive Relief (listing cases). Because inconsistent legal judgments can be remedied through adjudication and appeal, they do not *de facto* constitute irreparable harm.

In addition to remedies to resolve inconsistent legal determinations after the fact, present remedies exist for the Plaintiff to avoid inconsistent legal determinations. The Plaintiff argues that he prevailed in the Texas federal case and that he will suffer irreparable harm if this Court does not enter an injunction to prevent the Nevada state court, or any other court, from entering a judgment inconsistent with the determination by the Texas federal court. However, the Plaintiff has an adequate legal remedy. The plaintiff can raise the defense of res judicata and waiver in the Nevada state court (or any other) proceeding. *Weaver v. Fla. Power & Light Co.*, 172 F.3d 771, 774 (11th Cir. 1999) (holding that an injunction is inappropriate where the defense of res judicata is available). Given the longstanding rule that "[i]rreparable harm is . . . harm for which there is no adequate legal remedy," *Brewer*, 757 F.3d at 1068, the Plaintiff has not demonstrated why an injunction is necessary, or why other legal remedies are insufficient to prevent or resolve inconsistent legal determinations. Accordingly, the Plaintiff has not shown that the harm alleged is irreparable.

Second, even if inconsistent legal determinations constitute irreparable harm here, which this Court does not hold can never be a ground for irreparable harm, the Plaintiff has failed to show that inconsistent legal determinations are likely. Although the Plaintiff claims that the Arbitrator already ignored the judgment of the Texas federal court, the Plaintiff has not shown or argued that the Nevada state court (or any other court) is likely to reach a different conclusion than the Texas federal court. The Plaintiff instead simply asserts that he will be irreparably harmed "[i]f Mary Ann is permitted [to] forum shop yet another time and go to yet another court to seek confirmation and enforcement of the improper March 2019 award." (Mot. for TRO 9:16–9:20.) However, there is no reason to assume that the decision of the Texas federal court will be ignored by the Nevada state court or other courts, particularly if the decision of the Texas federal court was correct and fully resolves the dispositive issues at hand.

Under Nevada law, which governs the parties Settlement Agreement, the Plaintiff can fully raise and litigate the effect of the Texas federal court's decision in any other forum where the Defendant attempts to confirm either of her arbitration awards, and the Plaintiff can present evidence that the Arbitrator had no jurisdiction to issue a second arbitration award and exceeded his power. (Mot. for TRO Ex. 2); Nev. Rev. Stat. §§ 38.239, 38.241. All that the Plaintiff's contentions show is that inconsistent legal judgments are possible, because the Defendant might forum shop until she finds a court that might disagree with the Texas federal court. However, the Supreme Court has definitively stated that a legal "possibility" is not enough to demonstrate irreparable harm. *Winter*, 555 U.S. at 22. Such harm must be likely, meaning more probable than not. *Id.* Thus, even if the Plaintiff is right that the possibility of the multiplicity of lawsuits here could constitute irreparable harm, he has not provided any reason to conclude that it is more probable than not that another court will reach a different conclusion than the Texas federal court.

Although the Plaintiff asserts that the Defendant will forum shop until she finds a court that will confirm one of her arbitration awards, no evidence has been provided that the Defendant has sought to confirm her second arbitration award or litigate the issues before the Nevada state court in any other forum. The only other ongoing and potentially duplicative case that could create inconsistent rulings is the present one, filed by the Plaintiff. In fact, the Plaintiff filed both the Nevada state case and the present case before this Court. But surely the Plaintiff cannot obtain a preliminary injunction because of the possibility of inconsistent judgments, when he filed the two very cases that create the possibility of inconsistent legal determinations. If he could, a party would file a second case to manufacture the risk of inconsistent judgments to obtain a litigation injunction every time that it thought that it might lose an earlier case. The Plaintiff cannot obtain an injunction for a risk he created. Therefore, the Plaintiff cannot sustain

the argument that the Nevada state court is likely to disagree with this Court, and the Plaintiff has not presented any argument showing why the Nevada state court, or any other, is likely to disagree with the Texas federal court. Any further argument about what this Court or the Nevada state court or the Defendant might do is purely conjectural and speculative. Accordingly, the Plaintiff has not demonstrated that inconsistent judgments are likely.

Moreover, it may not be logically possible for the Plaintiff to demonstrate that inconsistent legal determinations are likely, at least with respect to the determination of the Texas federal court. If the Plaintiff is correct that he is likely to succeed on the merits because of his arguments, particularly regarding the argument that the dispositive issues are resolved by the Texas federal court, and the Plaintiff is entitled to present his arguments in any court where the Defendant might attempt to confirm one of her arbitration awards, then it does not follow that it is likely that a court will reach a judgment inconsistent with the Texas federal court. The forgoing argument also impliedly cuts against the proposition that it is likely that different courts will reach inconsistent judgments that would harm the Plaintiff, if it is objectively likely that the Plaintiff will succeed on the merits.

Finally, the Plaintiff has not demonstrated that irreparable harm will occur in the absence of an injunction. If the court does not enter injunctive relief, the only possible harm that may ensue is that a court other than this Court might first determine the issues raised here. Absent some further argument that has not been presented, the Court sees no reason why it must enter an injunction to ensure that it, instead of the Nevada state court or another court, first resolves the dispute between the Plaintiff and the Defendant.

///

///

///

## CONCLUSION

IT IS HEREBY ORDERED that Plaintiff's Motion for Temporary Restraining Order (ECF No. 7) is DENIED.

IT IS FURTHER ORDERED that Plaintiff's Motion for Preliminary Injunction (ECF No. 8) is DENIED.

IT IS SO ORDERED.

Dated this 26th day of March 2019.

_____
ROBERT C. JONES
United States District Judge